**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MOHAMMED AHMED, | : | **Hon. Peter G. Sheridan** |
| Petitioner, | : | |
| | : | Civil No. 06-3689 (PGS) |
| v. | : | |
| MICHAEL CHERTOFF, et al., | : | **OPINION** |
| Respondents. | : | |

**APPEARANCES**:

    MOHAMMED AHMED
    A413 72 617
    Hudson County Jail
    35 Hackensack Avenue
    Kearny, New Jersey  07032
    Petitioner Pro Se

    LEAH A. BYNON, ASSISTANT U.S. ATTORNEY
    CHRISTOPHER J. CHRISTIE, U.S. ATTORNEY
    970 Broad Street, Suite 700
    Newark, New Jersey  07102
    Attorneys for Respondents

**SHERIDAN**, District Judge

    Mohammed Ahmed filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his detention.  Respondents filed an Answer seeking dismissal of the Petition. Having thoroughly examined these documents and considered the arguments of the parties, this Court dismisses the Petition without prejudice to the filing of another petition in the event that Petitioner's removal is not reasonably foreseeable.

## I. BACKGROUND

Mohammed Ahmed, a native and citizen of Bangladesh, challenges his detention at a New Jersey jail by the Department of Homeland Security ("DHS"). The United States Court of Appeals for the Third Circuit set forth the relevant facts in its January 8, 2007, Opinion denying Petitioner's petition for review of a final order of the Board of Immigration Appeals:

> Ahmed entered the United States in 1990 as a lawful permanent resident. In 2001, a New York state court convicted him of fourth-degree grand larceny, see N.Y. PENAL LAW § 155.30, and sentenced him to five years of probation. He subsequently violated the terms of the probation, and - in June 2004 - the court sentenced him to one year in prison. Based on this event, the Government charged Ahmed with removability for having been convicted of an aggravated felony. See INA § 237(a)(2)(A)(iii). Under INA § 101(a)(43)(G), "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year" is an aggravated felony. The Immigration Judge concluded that Ahmed qualified under this provision. A.R. 40.
>
> On appeal to the BIA, Ahmed, who was then assisted by counsel, argued that "[t]he one-year sentence imposed for the violation of probation . . . cannot be considered the 'sentence imposed' for the theft-related offense" described in INA § 101(a)(43)(G). A.R. 7. According to counsel, to hold otherwise would be to thwart the intent of Congress, which - in § 101(a)(43)(G) - tied the original theft offense with the sentence of one year or more. A.R. 7-8. In a single-member order, the BIA disagreed with counsel, holding that Ahmed's "sentence to a determinate term of imprisonment of 1 year compel[led] the conclusion that his prior probationary sentence was revoked, resulting in the imposition of a sentence for the underlying grand larceny offense." A.R. 2. The BIA further noted that Ahmed's resulting status as an aggravated felon made him statutorily ineligible for relief such as cancellation of removal. See INA § 240A(a)(3).

Ahmed v. Attorney General, No. 06-1917 slip op. at pp. 2-3 (3d Cir. Jan. 8, 2007) (footnotes omitted).

On March 17, 2006, Ahmed timely petitioned for review of the BIA's order.[1] On May 8, 2006, the United States Court of Appeals for the Third Circuit granted Ahmed's motion to stay removal pending a decision on the petition for review. On January 8, 2007, the United States Court of Appeals for the Third Circuit issued an Opinion and Judgment denying the petition for review. The Court of Appeals found that the BIA committed no error when it determined that he was an aggravated felon and that his status as an aggravated felon made him statutorily ineligible for cancellation of removal. Id. at pp. 4-5. Ahmed filed a petition for rehearing en banc, which the Court of Appeals denied on February 5, 2007. On February 13, 2007, the Court of Appeals issued its mandate.

On August 2, 2006, while the petition for review was pending, Petitioner executed the § 2241 Petition (presently before this Court). The Clerk received it on August 7, 2006. Petitioner asserts that he has been detained in the custody of the DHS since January 19, 2005. He asserts that the Immigration Judge issued an order of removal on March 31, 2005, and that the BIA affirmed the order of removal on August 22, 2005. Petitioner contends that his detention is not authorized by statute, see 8 U.S.C. § 1231, as interpreted in Zadvydas v. Davis, 533 U.S. 678 (2001), and Clark v. Martinez, 543 U.S. 371 (2005), and violates the Due Process Clause of the Fifth Amendment of the United States Constitution, because he has been detained for more than six months since the BIA denied his appeal and his removal to Bangladesh is not reasonably foreseeable.

---

[1] Ahmed mistakenly submitted his petition for review to the United States Court of Appeals for the Second Circuit, which transferred the petition to the United States Court of Appeals for the Third Circuit.

This Court ordered the government to file an answer and copies of all relevant documents. On January 18, 2007, Respondents filed an Answer, arguing that the Petition should be dismissed. Respondents contend that Petitioner received procedural due process and that his detention is legal because, through January 8, 2007, it was due to a judicial stay of removal issued by the United States Court of Appeals.

## II. DISCUSSION

A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989); 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 8.1 (4th ed. 2001). This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of the INS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his detention is not statutorily authorized and violates his constitutional rights, see Zadvydas, 533 U.S. at 699. See Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir.2005) (recognizing that the Real ID Act did not eliminate district court habeas jurisdiction over alien's challenge to detention).

4

B. Legality of Detention

The Immigration and Nationality Act ("INA") authorizes the Attorney General of the United States to issue a warrant for the arrest and detention of an alien pending a decision on whether the alien is to be removed from the United States. 8 U.S.C. § 1226(a). Section 1226(a) provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . ." 8 U.S.C. § 1226(a). Section 1226(c) mandates detention during removal proceedings for a limited class of criminal aliens, including inadmissible criminal aliens, such as Petitioner. See 8 U.S.C. § 1226(c). Specifically, § 1226(c) provides:

> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General shall take into custody any alien who--
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (d) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

5

> (2) Release
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court upheld the constitutionality of § 1226(c), and ruled that mandatory detention of criminal aliens during removal proceedings is a constitutionally permissible part of the removal process. "[T]he statutory provision at issue governs detention of deportable criminal aliens *pending their removal proceedings*. Such detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Id. at 527-28.

Once an alien is ordered removed, the Attorney General is required to remove him from the United States within a 90-day "removal period." See 8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period').") 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(2) requires the Attorney General to detain an alien during the 90-day removal period:

> During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

8 U.S.C. § 1231(a)(2); see also Zadvydas, 533 U.S. at 683.

If the DHS does not remove the alien within the 90-day removal period, then § 1231(a)(6) authorizes the Attorney General to either release, or continue to detain, the alien. Specifically, § 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In Zadvydas, the Supreme Court held that § 1231(a)(6) does not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. However, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. To guide habeas courts, the Court recognized six months as a "presumptively reasonable period" of post-removal-period detention. Id. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.

7

And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

In 2005, the Supreme Court ruled in Clark v. Martinez that the post-removal-period detention of two inadmissible aliens from Cuba who had not effected "entry" was no longer statutorily authorized by § 1231(a)(6) because removal to Cuba was not reasonably foreseeable. See Clark v. Martinez, 543 U.S. at 384. The aliens "were detained well beyond six months after their removal orders became final," and the government "brought forward nothing to indicate that a substantial likelihood of removal subsists despite the passage of six months (indeed, it concedes that it is no longer even involved in repatriation negotiations with Cuba)." Id. at 386. Under those circumstances, the Court held that the petitions should have been granted. Id.

Petitioner argues here that his detention is governed by 8 U.S.C. § 1231(a)(6), as interpreted by Zadvydas and Clark v. Martinez. Specifically, Petitioner asserts that he has been in custody for over 20 months, that it has been more than six months since the BIA affirmed the order of removal, and that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner contends that his detention is no longer statutorily authorized and violates his Fifth Amendment right to substantive Due Process.

However, as the government correctly contends, Petitioner's removal period did not begin until January 8, 2007, when the United States Court of Appeals for the Third Circuit denied his petition for review of the decision of the BIA. This is because the 90-day removal period does not begin until the latest of several events occurs. See 8 U.S.C. § 1231(a)(1)(B)(ii). Specifically, § 1231(a)(1)(B) provides that

> [t]he removal period begins on the latest of the following:

8

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section (ii) applies here, as Petitioner's removal order was judicially reviewed by the United States Court of Appeals for the Third Circuit and the Court of Appeals ordered a stay of Petitioner's removal. Thus, under § 1231(a)(1)(B)(ii), Petitioner's removal period did not begin until January 8, 2007, when the Third Circuit denied his petition for review. See Hendricks v. Reno, 2007 WL 760403 (3d Cir. March 14, 2007); Vasquez v. Immigration and Customs Enforcement, 160 Fed. Appx. 199 (3d Cir. 2005); Wang v. Ashcroft, 320 F. 3d 130, 147 (2d Cir. 2003). Because the presumptively reasonable six-month period to effectuate Petitioner's removal will not expire until July 9, 2007, at the earliest, this Court will dismiss the Petition as premature. Id. However, the dismissal is without prejudice to the filing of another petition in the event that, after the expiration of the presumptively reasonable six-month period, there is no significant likelihood of removal in the reasonably foreseeable future.

### III. CONCLUSION

For the reasons set forth above, the Court will dismiss the Petition without prejudice.

_____
PETER G. SHERIDAN, U.S.D.J.

DATED: _April 27_____, 2007